Fourth case, United States v. Eason, Ms. Pollack. May it please the Court, Counsel, Elizabeth Pollack of the Federal Defender's Office on behalf of Nicole Eason. This is a very interesting case legally since it appears that there is very little precedent from any circuit that addresses this type of factual situation. But before we get started talking about how these facts are applied under the current law, I just want to make sure we're talking about the same facts. In the brief that the government filed, a new theory was advanced. One that I don't recall from trial in which the transcripts bear out was if in passing raised during a couple of moments in the transcript, there really was no argument to the jury that the minor victims alleged in this case were themselves defrauded and veiled or tricked into coming to live with Nicole and Calvin Eason. The evidence at trial... Did they have a decision, the minor victims? They did not, but as my argument will progress, that's irrelevant here. Because under the statute, the victim who is inveigled, who is kidnapped, who is decoyed, who is carried away, must be the same as the victim who is then held for ransom reward or otherwise. And in this case, there are two different parties. Yeah, I have a lot of trouble with that argument. Because the normal rule is that minors can't make decisions. They're not legally competent to make decisions. So it sounds like your argument is that minors, therefore, can't be kidnapped. No, Your Honor, and I'll tell you why. Interestingly enough, most of the case law here dates back many, many years, and the seminal case is Chatwin, which is from the 30s. And in that case, the girl who was kidnapped or allegedly kidnapped, the convictions were reversed, but she was a 15-year-old with the mental capacity of a 7-year-old. And she was the person who was lied to, deceived, convinced to come and live in this celestial marriage. And then the court asked the question, well, could she then be held against her will if she was a minor? And the court found in that case no evidence that she was not capable of forming consent and said that if there were a particular issue regarding the age of the victim not being able to have a cognizable will, well, then that would be directed to the jury to find as an element. And in all of the case law... No, look, my problem is that it doesn't, so far as I understand, as a legal matter, it doesn't matter what a minor's will is about where he or she lives. The legal decision is made by the parent or guardian. A minor can think what she wants, but she has no authority to make a binding decision. I understand what you're saying. And I think that that is not the factual situation in kidnapping cases because when a person, when a defendant kidnaps a child by enveiglement or by carrying away or in any other fashion, the defendant, the criminal, is addressing their conduct to that child and saying, hey, get in my car, I have a treat for you, or just lifting them up and carrying them away. Here's a straightforward case. Plaintiff, somebody goes to the airport and the child is going to take an unaccompanied flight to Los Angeles. The airline promises to provide somebody to accompany the child. Somebody else impersonates the airline employee, gets custody of the child by trick, and then doesn't deliver the child in Los Angeles. Right? The child is not tricked. The child is relying on his or her parents. Your view is that can't be kidnapping because the trick is played on the parent rather than the child. No. And that seems implausible. Well, it's implausible, but there's a second element that is required under the kidnapping statute, and that is that the child be held against their will. That's a separate element. It is. We first have to figure out whether tricking the parent to get the parent to give up custody to this fake airline employee can satisfy the enveiglement test. And you can't answer that by talking about held against will. So let's talk about the enveiglement part. Okay. So the enveiglement would be that the child's custody was procured by fraud based on a misrepresentation of the airline employee to the parent. It's not an airline employee. My hypothetical was that somebody pretends to be an airline employee, tricks the parent into giving up custody to that person, and then doesn't return him in Los Angeles as the airline employee would have done. That would be deception by fraud. So in that case, yes, I agree that the parent has been enveigled. But the person being deceived is the parent, not the child. I understand that. But then the second element becomes that the child must be held against their will. All right. So you've basically given up. No, that's not right. You've given up your argument. No, that's not true. What if they steal a six-month-old baby, and the baby is just going from one person to another, a perfectly happy baby? Right. That's not kidnapping? No, that's one of the other elements of the kidnapping statute, which is the carried away, the actual kidnapping portion. This case was not based on any forcible picking up and carrying away of a child. It was based on an enveiglement of a parent. So it is the deception by fraud. That is the only theory that was fully argued. What I don't understand in your argument is your notion that somehow the child's reaction to the abduction is material. The child may be delighted. Certainly. I understand that. I don't go back to that. In your defense, it's still kidnapping. It's kidnapping if they took the child in a way that meets the definitions under the statute. And what the statute says is that a defendant must kidnap, decoy, enveigle, et cetera, the victim, then hold the victim, and then cross state lines. And in this case, that is not what happened at all. Let me see if I can— The victim has no options in these cases. No, the victim doesn't have an option in terms of the enveiglement of their parents. They already came from a place that the parents or whatever didn't want them very much or couldn't handle. That's true. And so they go clear across country preying on these people, and then I don't know what the child thinks when they get somewhere else. Apparently it wasn't very good where they were, or maybe they have a problem that makes it not very good. And so the next place is just another—what do you call them, homing? Rehome. Yuck. Sure, I understand. And the process of rehoming, which is what Your Honor is referring to, is violative of many statutes, state statutes, but it is not kidnapping. Because in order for it to be a kidnapping, the victim, him or herself, must be enveigled, decoyed, carried away, et cetera, and then held against their will. And that didn't happen in this case. If we extend this reading— That's not kidnapping? No, it is because they would have carried away the victim. This is a totally different circumstance because we're talking about the fraud, the psychological deception that led the parent to give up the child, albeit under false pretenses, voluntarily. What Your Honor is referring to is— Why is that any different? Because it's an actual kidnapping. What the kidnapping statute is meant to— and saying to the parents, oh, there's something terribly wrong with your child. I can see it on his face. You know, he's got some terrible disease, so give me the child and I'll take it to the hospital immediately. You don't consider that kidnapping? I consider it not to be kidnapping if the person then took— Well, I don't agree with you. I don't think that makes the slightest bit of sense, what you're saying. But there's two sections of the statute that must be satisfied. And that was sort of like the example that the government used in closing, that if a mother was sick and tired and on the street and a person pulled up to her in a car and said, oh, your child was sick, I'll take them to the hospital. Yeah, I know that. You don't have to repeat that. Well, then— Now, what is it—what is the language in the kidnapping statute that you rely on? Well, what I'm relying on is the fact that the kidnapping statute— No, I don't want the fact. What is the language in the kidnapping statute that you're relying on for your very narrow interpretation of kidnapping? That the victim must be inveigled, then the victim must be held and at some point transported across state lines. That's what it says. And if a person— Well, it's held and it's transported across state lines. No, that's not true in this case at all. So kidnapping would then extend to a situation where, let's say, a parent receives a brochure from a summer camp. And it's got beautiful pictures and they send them an email and it says, oh, this is a wonderful summer camp, send your child here, it's going to cost $2,000. But the camp itself is terrible and there's nowhere to swim and the kids are dirty and they have to share bunks and it's a miserable situation. And the camp has lied to the parents to get the children to come to the camp. But all the time— Is that this case? It's analogous because all the time— Well, forget that case and talk about this case. Well, in this case what happened was— So what is the remedy here? What is the crime they committed? Well, it could be wire fraud. It could be violations of the ICPC. It could be violations of state adoption laws. It could be any number of things. It could be fraud on the state for procuring illegal benefits. But it is in kidnapping because at all times these parents— Kidnapping implies that a person is detained against their will, held confined, hidden somehow. What happened in this case is that, yes, the parents were lied to and they sent their children to live with the Easons. But at all times the parents knew where the children were located, had access to them by telephone and computer, and when they found out the truth, which was that the Easons were not who they represented themselves to be, the parents came and picked them up. That's not kidnapping. They're not holding them or confining them against their will or hiding them from their parents or preventing their parents from coming and picking them up. Kidnapping is when you lie to somebody or you carry somebody away against their will and then you conceal them and detain them by either psychological or physical force. That is not what happened in this case. But you're saying then the evagelment was a result of a parent's consent, and therefore as long as the parents consented and didn't know any better, it doesn't matter what the victim thinks. Well, it's just that— You kept going to the fact, well, the victim consented. Well, you're saying it's the parent's consent that is the deciding factor. Well, I don't think it's the deciding factor. Parents or whoever they were. Let me say this. The first element of the statute, we never challenged. The evagelment, the procurement by fraud was never truly challenged. The parents were the ones— So the parents, if that's what they are, I'm confused about that. They're the ones who were deceived. Correct. Maybe willingly deceived. Correct. And then they sent the child to go and live with these people where they were not held because the alleged victims, the named victims in the indictment are the children. The parents or whatever we're calling them wanted to get rid of the kid. They did, and they searched online for places to get rid of them to, and they came up with my client who had made false statements on the Internet. She copied somebody else's resume. She did, and we never disputed that. But the fact of the matter is that this could end up applying to so many different situations. Whenever a person makes a representation to a parent and then the parent lets their child go somewhere with that person, but the whole time the parents know where the children are located— You say that evagelment is a requirement. What the statute says is the kidnapping prohibition applies to whoever seizes, confines, evagels, decoys, kidnaps, abducts, or carries away, and holds for ransom or reward. Understood. It doesn't say evagelment of the victim is always required. It says any person who is any of those things and then that same person being the person held. It doesn't say you can evagel or decoy a third party and then obtain someone and then hold that third person and have that be kidnapped. The person in the statute, the person who is evageled, decoyed, or what have you, is also the person who is held. And every single case in existence has recognized that. When you're talking about what kidnapping is, there simply is no precedent anywhere for this type of a factual situation. But it doesn't make any sense because you could kidnap someone— And then kidnap them. Don't interrupt me, please. You can kidnap a person who is incapable of being deceived, can't you? Not without the rest of the elements. That's ridiculous. Well, I disagree. I think that in order to find kidnapping in all the case law states the same thing, you must have— Not what the statute said. No, the statute refers to a person, any person. And that person being the person evageled. It doesn't say you need evagelment of the kidnapped victim. It only refers to one victim. It doesn't say that anyone has to be evageled. You can be snatched and you have no idea what's happening. That's not evagelment. No, correct. I think you're misconstruing my argument. But you keep saying that there has to be, that the victim has to, that the child in these cases has to be evageled. It has to be against the child's will. The statute does not say that. The reason I'm using the term evageled in that fashion is because that is the only theory. It doesn't say that in the statute. And it doesn't make the slightest bit of sense. Because it implies that kidnapping a small baby is not kidnapping because the baby doesn't know there's something wrong going on. That's not at all what I'm saying. That is your position. No, it is not my position. My position is that whoever is—let's say it's a snatching. If that is the person snatched, that is the person held. Let's say it is a decoying. If the person decoyed is the victim, then they also must be the person held. If the person evageled is the victim, that must also be the person held. My argument is that any of the elements of the kidnapping statute, if applied to the victim, it must be the same person who is subject to the kidnapping action and then also held. That's the argument. I see I'm into my rebuttal time, and I will reserve. Okay, thank you. Mr. Pierce? May it please the Court, James Pierce of the United States. Defendant Nicole Eason committed the crime of federal kidnapping when she evageled and held both minor victims. Did the jury at some point ask about which verb applied? That's correct. Did they come up with evagel or does it matter? The government proceeded predominantly on an evagelment theory, and the jury asked the question and was told, no, you, jury, need only identify one of the seven of the list of crimes that the defendant convicted. And in fairness, the government did proceed on an evagelment theory here. The defendant evageled both the parents and the minor victims, but even if the defendant had only evageled the parents and held the minor victims, that would satisfy the statute. There's not only language in Chatwin to that effect, suggesting that, as Judge Easterbrook pointed out, parents often in the law stand in for their minor children, but it also creates absolutely absurd results, as a number of the panel members pointed out. Well, counsel, the argument that you can evagel the parents to hand over the child and that that meets the evagelment portion seems to me to cause problems for the prosecution on the hold portion, because the victim has to be held against his will. So once we decide that the will in question, that the decision is being made by the parent, doesn't it follow that you have to show that the child was held against the parent's will? I think that's a logical reading of the statute, and I think that that results... Now, was there evidence in this case, or was the jury told, that to find kidnapping it had to find that the kids were held against the parent's will? On the hold element. No, they were not specifically told that, but there was plenty of evidence to that effect, as we point out in our brief. Well, we have to deal with the problems of jury verdicts, right? The jury was not told that in order to convict, it had to find that the children were held against their parent's will. Isn't that a problem? No, I don't think so. Again, because the language that the jury was charged with followed the statute. But even if that was a problem, our argument would be that it was harmless, because there was plenty of evidence, and again, we're construing the evidence in the light most favorable to the jury's verdict, that the parents did not consent. No, that's the inveiglement portion. Both sides are confusing these two. The question is whether the trial was held against the parent's will. I take it that it's undisputed that when the parents or foster parents asked to have the kids back, the defendant promptly handed them back. That is not undisputed, no. When the parents of minor victim one sought to get minor victim one back, the defendant made a series of excuses and said, I'm not going to do it. Okay, so then perhaps there might have been a litigable issue on that point. But if the jury was never asked to resolve it, this is very difficult. We're here after a jury verdict, however, and again, the evidence being construed in the light most favorable to the jury's verdict is that the adoptive parents, had they known the truth, would not have consented. That is different from the inveiglement portion. Inveiglement was certainly what enabled the defendant to get custody of both minor victim one and minor victim two. But once then the defendant has custody of each of the minor victims, there has to be hold, mental or physical restraint for some appreciable period of time. After both of the minor victims were in the defendant's custody, the defendant continued to send out deceptive communications suggesting that a home study was coming, suggesting that in both cases it was about a home study, or in one case it was a recommendation that was fabricated. That's not inveiglement to procure custody of the minor victims. That's inveiglement to ensure that she can continue to hold the children. And so that is what shows that the parents never consented or to the extent that they could have consented, it was procured through deception, which is very clear is not, in fact, consent. Now, I also want to back up to a point that the defendant's counsel here started with, which is that the government never proceeded under a theory that both the parents and the minor victims were inveigled. In fact, that's not true. Now, as a matter of argument, at pages 950 to 952 of the closing argument and 998 of the rebuttal. I'm interested in how far you want to take this. I mean, Jones promises to Smith to love, honor, and obey her, as a result of which Smith marries Jones and moves in with him. But those are lies. He doesn't really love her. He's not agreeing to obey her. Is that kidnapping? I mean, there's deception, but I don't see what the hold or what the ransom reward or otherwise. He uses psychological tricks to get her not to move out. A month later, the tricks wear thin and she moves out. Your whole argument is that psychological tricks are enough, right? So we have, in my hypothetical, there is deception to get the second person to agree to live with the first person and psychological tricks to keep her there for a period. Is that the federal crime of kidnapping? Again, assuming a jurisdictional element has been satisfied under the hypothetical. Yeah, after they marry, they move to Indiana. Fair enough. I think if that holding is, we can establish that it was for ransom or reward or otherwise, if there's some benefit that flows to. I think it is conceivably, it meets the statutory elements. I don't think there's any prosecutor that I'm familiar with that actually would prosecute that crime. It's too common. I'm sorry? It's too common. It's too common. No, so I mean, I think it's possible that that may meet the statutory elements. I find it shocking that you think that is actually the crime of kidnapping. Well, I don't. That when one spouse lies to another about promises of love and obedience and they live together, perhaps because those promises are continued, that's kidnapping. Zsa Zsa Gabor would have kidnapped seven husbands. It's really quite extraordinary. What you're dealing with, you're talking about adults. Now it might be different with a child bride, right? And I think that's right. And to speak, though, to Judge Easterbrook's question, listen, I mean, Congress used particularly comprehensive language because it understood that these kidnapping scenarios take all sorts of different, look very differently. And granted that that broad language may capture things that would not, as I could imagine, ever be prosecuted, but it was designed to capture a situation like this, where a defendant is reaching across the country, using the Internet, fabricating or preying on the most vulnerable of victims. Now, Judge Mannion, you raised the question, sort of, what was the role of the adoptive parents here?  Their relationship to the minor victims was not a particularly good one. But here we are at a point, and the District Court acknowledged that as well, and said, listen, maybe they even owed some, you know, there was some criminal conduct on their behalf. But here, construing the evidence as we do, we're considering the conduct of the defendant. And the defendant doesn't dispute the overwhelming amounts of inveiglement. And then finally, to get back to this point, that inveiglement was directed also at the minor victims. I cited earlier places in the argument. The court can go and look at it in the closing argument where the government raised that. It's deceiving the kids. This is normal. This is what's usual, even though they're sexually abusing them and doing all sorts of other things. You see, the problem here is not only that this is what I consider pretty horrible. They also got 480 months in prison. This is a pretty big conviction and a pretty big sentence. And it's not necessarily not deserved. It's just that, you know, we've got to sort this out and make sure it fits into the kidnapping issues. When it brings up, she's trying to say, hey, this isn't kidnapping. And you're saying it is, and it would be in a narrow viewpoint, based on all these consents we're talking about, that I look at it, the kids are disabled, they have problems, and maybe they are very difficult to deal with. But whatever it is, they were, I don't want to call it trapped or whatever. That's where they are. They can't run away. I think one of them was even pointing that out at some time later. I don't know how old they were when they testified versus when they were in Vagal. And at that point held. Judge Maney, let me point out one thing about the sentence here. There are three counts of conviction. Counts 1 and 3 are for kidnapping. Twenty-year concurrent sentences on those. Count 2 is for transportation with the intent to engage in unlawful sexual activity under Illinois law. That was the source of the 40-year, 480-month sentence. There is, and that involved minor victims, ones, the sexual abuse that she suffered after having been transported from California to Illinois. None of the kidnapping arguments here, of course, we argue that the court should affirm those, but none of the kidnapping arguments apply to that Count 2 conviction, which drives the sentence. So even were the court to find some trouble with those convictions, that would not affect the defendant's 480-month sentence. You get 480 months just for that part? That's correct. It was 480 months on Count 2, concurrent to two 20-year sentences on Count 1. Okay, thank you. I should have known that. Counts 1 and 3. Just talking briefly about the evidence of holding here, as I mentioned in the colloquy with Judge Easterbrook, there was evidence that it was against the consent of the parents. It was also against the consent or the holding of the minor victims. The fact that they could go to school is essentially irrelevant. I mean, the defendant targeted them because they were minors and vulnerable. She used physical abuse against minor victim 1. She essentially stifled the communications of minor victim 2. In our view, that is the degree of psychological force that would achieve the hold or would establish the hold element under the kidnapping statute. One final point, unless, of course, the Court has questions. There are uncomfortable ramifications to the different ways to interpret the statute. But in our view, the fact that defendant's reading would allow a situation where a 6-month-old, a parent of a 6-month-old who is looking to hire a nanny, gets fabricated documentation from the nanny, hires the nanny on that basis, drives the baby to the nanny's house, comes back, and then gets a call saying, I'm holding your child for ransom, that's not kidnapping because the enveiglement went clearly to the parent, but the holding is performed on the victim, on the baby. If that's the result that the defendant's reading of the statute creates, that severely undermines its purpose and is an absurd result, just simply cannot be a correct reading of the kidnapping statute. Again, unless there are further questions, I'm happy to yield the balance of my time. Thank you, Mr. Pierce. Ms. Pollack, do you have more time? No, but not a minute. That last hypothetical is not at all what the defense argument is. We are not saying that if a person lies to a mother of a 6-month-old, gets custody of a 6-month-old, and then says, you have to pay me a ransom or I'm not giving the kid back, that would meet the requirements of the statute because the child is totally unable to even form a thought at that point. Your Honor brought up the issue of whether or not this would be applicable in child bride situations, which is interesting because that is exactly the fact pattern of Chatwin, the leading case after the Lindbergh baby was kidnapped and the law was passed. That was a 15-year-old with the mental capacity of a 7-year-old. I just don't understand your last statement. You're arguing that the enveiglement part of the statute is not met, and if it's not met, then even if a ransom demand is made, it wouldn't matter. That would just be one element, but one element is not all elements. I really don't understand your position. It seems to be switching back and forth on these different elements. No, the position was at trial and remains that the victim referred to under the statute is the same, and if you look at Chatwin, which is the three kids. Right, so if you have no enveiglement and no carrying away but a later ransom demand, on your view, there is no kidnapping. If it is against, what Your Honor said earlier about it being, if the enveiglement is against the will of the parent and the holding is against the will of the parent, then that might be a kidnapping, but that is not what happened. In this case, the enveiglement was of the parent. The holding was of the child without any issue with regard to the parent, which cannot be kidnapped, and that is the point. Do you agree that the 480-month sentence stands regardless of whether there was a kidnapping? No, Your Honor, and, well, it is all dependent. Did you challenge that? Do you agree? Do you challenge the sentence? I didn't challenge the sentence, but I challenged the basis of Count 2's conviction based on the argument with regards to Counts 1 and 3. So, for example, there was a lot of extraneous evidence admitted under Rule 404B concerning the motive and intent for both the kidnapping and the travel with intent. Now, if you'll recall from the record, there was one incident, one alleged digital penetration of minor victim 1. It happened on one occasion. The rest of the abuse was perpetrated by the other defendant, who was not at issue in this case. So the argument is that if legally you cannot kidnap, this is not a kidnapping case, then all of the evidence that was admitted to prove intent, motive, etc. with regards to the kidnapping, which was also conflated with the intent, motive, etc. for travel with intent, then there is simply no clear basis that evidence would have been admitted at trial, and we need a remand to address that. So we did not challenge the length of the sentence, but we did challenge the basis for the evidence that was admitted to procure that conviction. So if the kidnapping were to go out, what's left? Just one count of travel with intent, which at this point, the argument is that it would require a retrial because so much of the evidence with regards to the kidnapping was also admitted with regards to the travel with intent count. Everything is too conflated and combined. If the kidnapping counts go out, there needs to be a retrial on Count 2, and that's our position. Thank you. What did you mean in your... The third issue you mentioned in your table of contents, if this court reverses the kidnapping convictions, a retrial is warranted on the transportation of a minor charge where multitudinous evidence was admitted to show the defendant's motive. I don't get it. Well, what happened was there was a lot of evidence admitted with regards to other children throughout the course of the trial. We objected to the admission of that evidence on grounds of 404B and prejudice. The district court admitted much of that evidence for two reasons. One, to show motive and intent for the kidnappings, and second, to show motive and intent for the travel with intent. That evaluation was based on all three counts combined. If the first two counts go away and the kidnapping counts are reversed, then there was a lot of evidence that was conceivably admitted with regards to Counts 1 and 3 which should not have been admitted, which would have swayed the jury with regards to Count 2, and we have no way of knowing that. So that's why I requested a remand on Count 2. You mean the evidence of other victims. Right. Yeah, and there was some issue where states just didn't bother with them. Correct. Well, and none of the other victims alleged any sexual abuse at all, but there were grooming tactics which were presented, much of which was contested. So if those people do not testify at a retrial, then you could conceivably have a very different map of evidence for Count 2, which is why we requested the remand. Okay, well, thank you, Ms. Pollack and Mr. Pierce.